IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BLAKE C., by and through his mother, TINA F., | ) Civ. No. 07-00535 SPK-LEK |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF EDUCATION, STATE OF HAWAI'I, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## ORDER REVERSING DECISION OF HEARINGS OFFICER

This order addresses the remaining issues in this Petition filed pursuant to

20 U.S.C. § 1415(i)(2), the judicial review provision of the Individuals with

Disabilities Education Act ("IDEA").  A prior order of August 12, 2008, detailed

this case's long and complicated procedural history.  The prior order (1) ruled on a

threshold statute-of-limitations issue and found that the action is <u>not</u> time-barred;

(2) set forth analysis on the appropriate standard of review under the IDEA (which

analysis, as detailed to follow, is superseded based upon intervening Ninth Circuit

case law); and (3) requested supplemental evidence.  The Court indicated it would

1

proceed with reviewing the merits of the administrative decision after the record was supplemented. The Court then delayed its review because the parties subsequently engaged in settlement proceedings before U.S. Magistrate Judge Leslie Kobayashi. However, it has become apparent that the settlement negotiations have not resolved the dispute. Review is now complete and the Court REVERSES the hearings officer and AWARDS tuition reimbursement for January through June 2007.

## I.

It is undisputed that Blake C. is a child with autism or otherwise qualifies for special education services under the IDEA. The docket lists both Blake C. and his mother Tina F. as Plaintiffs. As before, the Court will not distinguish between either Plaintiff, referring instead to Plaintiffs solely as "Blake C.," "Petitioner," or "Plaintiff." The Court will refer to Defendant State of Hawaii, Department of Education, as "DOE," "Respondent," or "Defendant." At issue is a September 28, 2007, decision of an administrative hearings officer finding no procedural or substantive violations of the IDEA. The September 2007 administrative decision concerns the 2006-07 school year, or, more specifically, a December 18, 2006, Individualized Education Plan ("IEP") covering the second part of that school year.

The salient details of that September 2007 decision and its administrative hearing are set forth in the appropriate sections to follow.  Further, several <u>other</u> administrative decisions or proceedings concerning several different school years are relevant.  The complete procedural history of this case is particularly important to be able to comprehend both the context of the present request and the precise nature of the relief now sought.  So, the Court repeats the relevant history as set forth in the prior order (and supplements the relevant prior proceedings as necessary) in chronological fashion:

May 30, 2006    Administrative Hearings Officer Haunani Alm finds violations of the IDEA for Blake C.'s 2004-05 and 2005-06 school years.  That is, Blake C. was denied a Free Appropriate Public Education ("FAPE") for those school years.  These violations are now matters of historical fact.

The findings, however, were somewhat limited because Blake C. attended a public school for the school year ("SY") 2005-06 and therefore he was not entitled to reimbursement for a private placement.  (Blake C. had attended a private placement for 2004-05.)  The hearings officer noted that she would not award <u>compensatory</u> education (as opposed to reimbursement) for the SY 2005-06 violation in the form of private tuition for SY 2006-07, because such a request had not been made in the initial request for a due process hearing.

The hearings officer also found Blake C. was not entitled to reimbursement for SY 2004-05 because the request was not made within 90 days of the "unilateral special education placement."  He had attended the Pacific Autism Center ("PAC") for most of SY 2004-05 on a

"unilateral" basis, and there was an issue as to which limitations period applied – two years or 90-days.[1]

June 21, 2006     Blake C. petitions for federal court review of the May 30, 2006 decision.  This was case <u>Blake C. v. Dep't of Educ.</u>, Civ. No. 06-00335JMS-BMK.

Sept. 12, 2006     U.S. District Judge J. Michael Seabright remands the matter to the hearings officer for the limited purpose of making a factual finding regarding SY 2004-05 as to when Blake C. was given notice of the statutory change in the applicable statute of limitations.  If Blake C. was not given proper notice of the 2005 change in the statute of limitations in Haw. Rev. Stat. § 302A-443(a)(2), then the prior (2-year) limitation period would apply and he would then presumably be eligible for reimbursement for SY 2004-05.

Jan. 19, 2007     On remand, the hearings officer makes factual findings indicating that improper notice of the new limitations period had been given.  That is, it was a due process violation to apply the "new" (90-day) statute of limitations.  Thus, Blake C.'s request regarding SY 2004-05 was deemed to have been timely.  The hearings officer proceeded to award tuition reimbursement for SY 2004-05.

       The hearings officer also awards a year of <u>compensatory</u> education to include reimbursement for a private placement in SY 2006-07, including the extended school year period (e.g., summer school) as compensation for the denial of FAPE for SY 2005-06 (despite earlier

---

[1] The Hawaii Legislature amended Haw. Rev. Stat. § 302A-443(a)(2) in 2005, among other things, changing the limitations period from two-years to 90-days within which to file for relief for reimbursement of costs for a "unilateral special education placement."  If the old period applied, then the request regarding reimbursement for SY 2004-05 was timely.  If the new period applied, it was not.  (The period was amended again in 2008.)

having noted that she would not provide that relief because it had not been originally requested).[2]

Jan. 25, 2007    Given the hearings officer's January 19, 2007 award of compensatory education for SY 2006-07 (which was almost half over at the time), Blake C. immediately enrolls (or re-enrolls) in a private placement at PAC where he had attended in 2004-05.  The tuition is over $11,000 a month.  He begins attending PAC on January 29, 2007.  This is the "January 29, 2007 placement."

April 16, 2007    With the previous remand now complete, Judge Seabright holds a hearing after supplemental briefing as to the effect of the hearings officer's January 19, 2007 decision.  The DOE objects to the January 19, 2007 decision both (1) on the merits (i.e., whether Blake C. received adequate notice of the statutory change) and (2) as to the remedies awarded (i.e., tuition reimbursement for SY 2004-05 and compensatory education for SY 2006-07).  The DOE argues, among other things, that the tuition awards were beyond the scope of the limited remand.

April 26, 2007    Judge Seabright issues an order (1) affirming the hearings officer's decision regarding a lack of notice for SY 2004-05 and regarding tuition reimbursement for that year – Blake C. is therefore entitled to the reimbursement of tuition at PAC for SY 2004-05; but (2) reversing the award of compensatory education in the form of tuition for SY 2006-07 because the hearings officer exceeded the scope of the limited remand in that regard (effectively, the officer did not have jurisdiction to make

---

[2] Blake C. was then attending public school for SY 2006-07.  To reiterate, he attended a private placement at PAC for SY 2004-05 (for which reimbursement was awarded), and then attended a public school for SY 2005-06 (for which no reimbursement was possible, and for which the hearings officer then awarded compensatory education at the private placement for SY 2006-07 including ESY for the summer).

5

such an award for SY 2006-07).  Judge Seabright's order indicates that Blake C. should have or could have challenged the offer of FAPE for SY 2006-07 on the merits in a different proceeding.

Part of what was given was lost.  That is, Blake C.'s compensatory award for SY 2006-07 that was given in January 2007 (which was already being implemented in reasonable reliance on the hearings officer's award) was taken away (although correctly, at least procedurally, given the case's procedural posture).  Meanwhile, Blake C. had incurred and subsequently incurred substantial expenses (he remained at the private placement through the end of calendar year 2007 – into SY 2007-08).

June 12, 2007       Blake C. files another (separate) administrative request for hearing, challenging the SY 2006-07 offer of FAPE on the merits.  This request specifically challenges a December 18, 2006 IEP.[3]  In effect, however, Blake C. is attempting to gain back the hearings officer's January 2007 award for SY 2006-07 that was "taken away" on April 26, 2007.  The Court has inferred that this challenge would not have been made if the compensatory award for SY 2006-07 had not been lost – there would have been no practical reason to challenge the December 18, 2006 offer of FAPE otherwise.

The DOE argues in response by motion at the administrative level that this new proceeding is time-barred as not having been filed within 90-days of the January 29, 2007 placement.  (Unlike for SY 2004-05, there was no question as to <u>notice</u> of the new 90-day filing deadline; rather, the question is whether it was a "unilateral special education placement.")

---

[3] There was some question whether the December 18, 2006 IEP is itself a stand-alone IEP or just a review of an IEP for the entire SY 2006-07 that was completed earlier in August of 2006.  It turns out that it is both.

| | |
|---|---|
| Sept. 28, 2007 | Hearings Officer Rodney Maile (not Officer Haunani Alm who had conducted the prior proceedings) issues a decision finding no IDEA violations for SY 2006-07 (despite the prior compensatory award for that school year).  The decision does not specifically address the statute-of-limitations argument that the DOE had raised by motion in the administrative proceedings. |
| Oct. 24, 2007 | Blake C. files a petition in this case, seeking review under 20 U.S.C. § 1415(i) of the Sept. 28, 2007, decision.  The petition was assigned to this Court as <u>Blake C. v. Dep't of Educ.</u>, Civ. No. 07-00535SPK-LEK.<br><br>In the current case, after a period for preparation of the administrative record on appeal, the parties filed opening, answering, and reply briefs.  The matter was then submitted to this Court in May 2008.  Among other things, the DOE argues – as it had at the administrative level – that the matter is time-barred under Haw. Rev. Stat. § 302A-443(a)(2) because the request for review was not filed within 90-days of the January 29, 2007 private placement. |
| July 7, 2008 | A hearings officer issues a favorable decision to Blake C. regarding SY 2007-08 from yet another administrative proceeding that had been filed on October 13, 2007.  This decision found a denial of FAPE for SY 2007-08, which is the year following the school year (SY 2006-07) that is primarily at issue in the current proceedings.  Although the decision concerns the following school year, the decision is highly relevant here because the hearings officer awards reimbursement for SY 2007-08 at PAC (including from July to December of 2007).  The award thus duplicates some of the amounts that Blake C. seeks in this proceeding (here, he seeks, among other things, reimbursement from January to December of 2007).  The DOE did not challenge this July 7, 2008 decision in a federal court proceeding and it is now final. |

August 12, 2008     This Court issues an order ruling in part on the review of the September 28, 2007 administrative decision.  The Court finds the matter to have been timely filed because Blake C.'s January 29, 2007 placement was not a "unilateral special education placement" within the meaning of Haw. Rev. Stat. § 302A-443(a)(2).[4]  The Court followed U.S. District Judge Alan C. Kay's

---

[4] At the time, Section 302A-443(a)(2) provided, in pertinent part:

(a) An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; provided that the hearing is requested:

(1) Within two years of the date the parent, guardian, or department knew or should have known about the alleged action that formed the basis of the request for a hearing; and

(2) Notwithstanding paragraph (1), within ninety days of a unilateral special education placement, where the request is for reimbursement of the costs of the placement.

Notably, effective July 1, 2008, the Hawaii Legislature amended Section 302A-443(a)(2) to change the 90-day period to 180 days.  Section 302A-443(a)(2) now provides:

(a) An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; provided that the hearing is requested:

(1) Within two years of the date the parent, guardian, or department knew or should have known about the alleged action that formed the basis of the request for a hearing; and

(2) Notwithstanding paragraph (1), within [ninety days] **one hundred and eighty calendar days** of a unilateral special education placement, where the request is for reimbursement of the costs of the placement.  (Old text in brackets; New text in bold)

2008 Hawaii Sess. Laws Act 179 (S.B. 2004) (effective July 1, 2008).  It is unclear whether this change would be retroactive but, given the Court's ruling, the change had no effect on this case.

decision in <u>D.C. v. Dep't of Educ.</u>, 550 F. Supp. 2d. 1238 (D. Haw. 2008).  If it was such a placement, then an administrative proceeding challenging the offer of FAPE would have been due on or about April 30, 2007, and the current action would be barred because it was not filed until June 12, 2007.  But because it was not a "unilateral placement," this proceeding is not time-barred.

The Court also indicated that it would reject Blake C.'s argument that the well-established "<u>Rowley</u> standard" (<u>Board of Educ. v. Rowley</u>, 458 U.S. 176 (1982)) no longer applies, at least as the standard has been described in many subsequent cases.  <u>Rowley</u>, among other things, established a "basic floor of opportunity" to measure whether the IDEA has been violated.  If an IEP is properly developed through the IDEA's procedures and is "reasonably calculated to enable the child to receive educational benefits" then the IDEA's requirements have been met.  <u>Id.</u> at 206-07.  The Court rejected Blake C.'s argument that a somewhat higher "meaningful educational benefit" standard should apply.  Blake C. had been arguing, in part, that the hearings officer's September 28, 2007, decision was wrong because the hearings officer did not apply this "meaningful educational benefit" standard.

The August 12, 2008, decision also requested supplemental evidence from the parties regarding the amounts incurred by Blake C. (amounts both before the filing of the administrative challenge in May of 2007, as well as amounts incurred to the end of 2007, which were then unknown to the Court.)  The Court also requested information regarding Blake C.'s placement after that administrative hearing (i.e., for the rest of calendar year 2007 and into 2008).

It was only after this August 12, 2008 order's request for supplementation that the Court was made aware of the

intervening July 7, 2008 administrative award regarding the balance of calendar year 2007. It is also established that Blake C. relocated from Hawaii to the mainland sometime after December 2007.

## II.

Before proceeding with reviewing the administrative record regarding SY 2006-07, the Court must revisit the appropriate standard for reviewing an offer of FAPE under the IDEA. In its prior order of August 12, 2008, the Court ruled that it would not apply a "meaningful educational benefit" standard, but would continue to apply an apparently lesser "some benefit" standard. After that order, however, the Ninth Circuit issued an opinion that, among other things, specifically addressed and adopted a "meaningful educational benefit" standard. See N.B. v. Hellgate Elementary Sch. Dist, 541 F.3d 1202, 1213 (9th Cir. 2008). This order thus supercedes the Court's previous order as to the appropriate standard.[5]

Generally, the question on the merits is whether a particular IEP was "reasonably calculated to enable the child to receive educational benefits[.]" Rowley, 458 U.S. at 207. See, e.g., Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1031 (9th Cir. 2006) (applying Rowley); Hood v. Encinitas Union Sch.

---

[5] Since Hellgate was issued, this Court has issued a decision in another case (Summer H. v. Dep't of Educ., Civ. No. 07-00554SPK-LEK) regarding the applicable standard. Much of the language here is taken from that decision.

Dist., 486 F.3d 1099, 1107-08 (9th Cir. 2007) (same).

Under Rowley, "[a] court's inquiry in suits brought under [§ 1415(i)(2)] is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." Rowley, 458 U.S. at 206-07 (footnotes omitted).

In this regard, the Ninth Circuit's opinion in Hellgate acknowledged that other opinions have recognized a "meaningful educational benefit" type of standard against which to measure an IEP's adequacy. See Hellgate, 541 F.3d at 1213 (discussing "some educational benefit" and "meaningful benefit" standards). Hellgate reasoned that, after post-Rowley amendments to the IDEA, "a school must provide a student with a 'meaningful benefit' in order to satisfy the substantive requirements of the IDEA." Id. (citations omitted). Hellgate contrasted a "meaningful benefit" standard with a pre-1997 "some educational benefit" standard. It characterized the "meaningful benefit" standard as "heightened," id., and 1997 IDEA statutory amendments as a "significant shift in the focus from the disability education system prior to 1997." Id. at n.3. "The

11

primary purpose of the EHA [the Education for all Handicapped Children Act of 1975 – the predecessor to the IDEA] was to provide 'access' to education for disabled students."  Id. (citing Rowley).  The focus now, apparently, is on both access and "meaningful benefit."[6]

Various opinions have left it ambiguous as to what the precise difference, if any, is between "meaningful" benefit and "some" benefit.[7]  Indeed, the circuits are split.  See, e.g., Lester Aron, Too Much or Not Enough: How Have the Circuit Courts Defined a Free Appropriate Public Education After Rowley?, 39 Suffolk U. L. Rev. 1, 7 (2005) ("The circuit courts are severely divided on the critical issue of the standard for a FAPE for disabled students.");  Philip T.K. Daniel, Some Benefit" or "Maximum Benefit": Does the No Child Left Behind Act Render Greater Education Entitlement to Students with Disabilities?, 37 J. L. & Educ. 347, 357-62 (July 2008).  The Court interprets the latest guidance from the Ninth

---

[6] Further amendments were made in 2004.  Those amendments may also have impacted on the "meaningful benefit" standard.  See J.L. v. Mercer Island Sch. Dist., 46 IDELR 273, 2006 WL 3628033 (W.D. Wash. 2006).

[7] See Systema v. Academy Sch. Dist. No. 20, 538 F.3d 1306, 1313 n.7 (10th Cir. 2008) ("Admittedly, it is difficult to distinguish between the requirements of the 'some benefit' and the 'meaningful benefit' standards.").  If "some" means "more than minimal" but real progress, then there might be no difference.  If "some" means only "any at all" then a "meaningful benefit" is indeed a heightened standard.  In 2000, then-Circuit Judge Alito described a "meaningful benefit" test as "somewhat more stringent."  See T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3rd Cir. 2000).  In any event, the Court will proceed to apply a "meaningful benefit" standard as discussed in Hellgate and as described in cases that Hellgate relies upon.

Circuit in Hellgate as meaning that an IEP must be individualized and tailored to the "unique needs" of the child and reasonably calculated to produce benefits (i.e., learning, progress, growth) that are significantly "more than de minimus," and "gauged in relation to the potential of the child at issue." Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 864 (6th Cir. 2004) (citations omitted) (cited with approval by the Ninth Circuit in Hellgate).

"Only by considering an individual child's capabilities and potentialities may a court determine whether an education benefit provided to that child allows for meaningful advancement." Id. That is, the programs must be sufficiently "individualized" to produce "meaningful" benefit. See, e.g., Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 172 (3d Cir. 1988). Programs must be individually tailored to produce "more than a trivial education benefit." Deal, 392 F.3d at 862 (citing Polk, 853 F.2d at 180 and Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247-48 (3d Cir. 1999)). "[A] satisfactory IEP must provide 'significant learning[.]'" Kingwood, 205 F.3d at 577 (citing Polk, 853 F.2d at 182). What is "appropriate" cannot be reduced to a single standard but, rather, "must be gauged in relation to the child's potential." Ridgewood, 172 F.3d at 247 (citing Polk, 853 F.2d at 184-85).

For example, "[w]hen students display considerable intellectual potential,

13

IDEA requires 'a great deal more than a negligible [benefit].'" Id. (citing Polk, 853 F.2d at 182). Courts "must analyze the type and amount of learning of which a student is capable in order to determine how much of an educational benefit must be provided." Deal, 392 F.3d at 863 (citation and internal quotation marks omitted).

However, even after Hellgate, it also remains true under a "meaningful benefit" measure that "[a] school district clearly is not required to 'maximize each child's potential commensurate with the opportunity provided other children,' i.e., to provide all children with equal educational opportunity." Id. at 862 (citing Rowley, 458 U.S. at 198). The Ninth Circuit has repeatedly "emphasized that 'states are obligated to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to a handicapped child,'' rather than 'potential-maximizing' education." Hood, 486 F.3d at 1107 (citations omitted).[8] Regardless of whether the Court applies a "some benefit" standard or "meaningful benefit" standard, "the IDEA does not guarantee 'the absolutely best or potential-maximizing education for the individual child.'" R.B., ex rel. F.B.v.

---

[8] This "new" standard is similar to, if not the same as, the review this Court has given in the past in similar cases. Nevertheless, to harmonize the case law, the Court interprets "basic floor of opportunity" as meaning a minimum necessary for a "meaningful benefit." That is, "basic floor of opportunity" must mean more than that calculated to produce only "some" benefit. See Hellgate, 541 F.3d at 1213 & n.9. The distinction is subtle, but could make a difference depending upon the particular facts at issue.

Napa Valley Unified School Dist., 496 F.3d 932, 946 (9th Cir. 2007) (citations and internal quotation marks omitted) (emphasis in original); see also, e.g., M.M. ex rel. C.M. v. School Bd. of Miami-Dade County, Fla., 437 F.3d 1085, 1102 (11th Cir. 2006) (stating the principle that "under the IDEA there is no entitlement to the 'best' program," citing cases from various circuits that applied various tests -- "some benefit," "basic floor of opportunity," or "meaningful benefit.").  This is because Courts are not educators and are not "to substitute [our] own notions of sound educational policy for those of the school authorities which [we] review." Hood, 486 F.3d at 1108 (citations omitted) (alterations in original); Van Duyn v. Baker Sch. Dist., 502 F.3d 811, 817 (9th Cir. 2007) (same).

In short, Rowley still applies; its meaning, however, has been refined by subsequent statutory changes and corresponding case law.


III.

Initially, in this particular case, the intervening change (or clarification) in law alone is a valid reason to reverse (or at least remand) the hearings officer's September 28, 2007 decision.  The hearings officer appears to have applied the wrong standard.  His decision simply quoted Rowley, but did not analyze whether "progress" or "benefit" was "meaningful."  [AR 238, V.1, Tab 25 (decision) at

15

p.15].  That lack of analysis here is not harmless, as it might be in other cases.
There are other reasons to reverse as well.

A.

As the record now stands, it is historical fact that Blake C. was denied a
FAPE for at least three of the past four school years:  SY 2004-05, SY 2005-06,
and SY 2007-08.  He was awarded tuition reimbursement for the denial of FAPE
regarding SY 2004-05 and SY 2007-08.  Thus far, he has received no effective
award for the denial in SY 2005-06.

Rather, as described earlier, in January 2007 a hearings officer awarded
(albeit improperly, given the procedural posture) compensatory education for that
SY 2005-06 denial in the form of an award for whatever was then remaining of SY
2006-07.  In at least partially-reasonable reliance on that hearings officer's award,
Blake C. incurred about $100,000 in tuition expenses at PAC ($62,680.83 for
tuition from January 29, 2007 through July 8, 2007; and $38,297.11 for July 9,
2007 to the end of December 2007).[9]  It was logical and reasonable for Blake C. to
transfer to PAC soon after the hearings officer's January 2007 decision awarding
that compensatory education – the SY 2007-08 was already half over and no

---

[9] See Exh. A to Plaintiff's Supplemental Brief of August 26, 2008; and Declaration of
Eileen K. Muraoka and corresponding exhibits attached to Defendant's Supplemental Brief of
August 26, 2008.

16

apparent effort was made by the DOE to obtain a stay of that compensatory award. That award was vacated, however, for a "technical" (though valid) reason at the end of April 2007, near the end of that school year.  (At that point, one might question whether continued reliance on the hearings officer's award would be "reasonable," at least for purposes of an award based on equity.)

Blake C. was also compensated for the denial of FAPE for SY 2007-08 in the form of tuition reimbursement from July 9, 2007 to the end of December 2007 ($38,297.11).  He then relocated from Hawaii to the mainland.  That is, he has received some of what he, at least initially, sought when he filed the present action seeking an award for <u>calendar</u> year 2007.

Now that the Court has proper jurisdiction challenging whether Blake C. should be awarded a remedy for SY 2006-07, the Court could simply award reimbursement for the remaining outstanding balance ($62,680.83 for tuition from January 29, 2007 through July 8, 2007) for obvious equitable reasons: compensation for the denial of FAPE in SY 2005-06.  The Court has the power under the IDEA to "grant such relief as the court deems appropriate."  20 U.S.C. § 1415(i)(2)(C).  This provision gives the Court "broad discretion" to fashion appropriate equitable relief -- including compensatory and reimbursement awards and injunctive relief.  <u>See</u> <u>Forest Grove Sch. Dist. v. T.A.</u>, 523 F.3d 1078, 1084-85

(9th Cir. 2008) ("The Supreme Court has interpreted the emphasized provision as

conferring 'broad discretion on the court.'") (quoting Sch. Comm. of Town of

Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1985)).  Forest Grove reiterated

that

> once a court holds that the public placement violated IDEA, it is
> authorized to "grant such relief as the court determines is
> appropriate." 20 U.S.C. § 1415[(i)(2)(C) ].  Under this provision,
> equitable considerations are relevant in fashioning relief, and the court
> enjoys broad discretion in so doing.  Courts fashioning discretionary
> equitable relief under IDEA must consider all relevant factors[.]

Id. at 1084 (quoting Florence County Sch. Dist. Four v. Carter ex. rel. Carter, 510

U.S. 7, 15-16 (1993)) (square brackets in original).  On the current record, and

considering "all relevant factors," it is "appropriate and equitable" and makes sense

for the Court to award Blake C. the remainder of the tuition incurred during

calendar year 2007(specifically $62,680.83).  This would be appropriate relief for

the uncompensated-for denial of FAPE from SY 2005-06.[10]

This result also makes sense because, as explained to follow, the Court also

determines that the August 2007 administrative hearing at issue (for SY 2006-07)

was fundamentally unfair, and the current record demonstrates that Blake C. was

making no "meaningful progress."  That is, the December 18, 2006 IEP was not

_____

[10] The Petition also requested reimbursement for transportation costs, but there is no
evidence in the record as to transportation, either as to distances, manners, or specific expenses.
Petitioner has not met his burden of proof as to reimbursement for transportation costs.

reasonably calculated to produce "meaningful educational benefit."

B.

There is no need to reiterate all the details of the September 28, 2007 administrative decision. It is enough to state that the hearings officer's decision was based primarily on the concept that Blake C. was making "progress." In this regard, the hearings officer made several relevant findings. The hearings officer reviewed an assessment of Blake C. performed by the PAC after he returned to that placement in February of 2007:

> 21. In or about February 5, 2007, the Private Placement School performed an assessment of Student to determine his academic and behavioral strengths and needs, and according to the assessment performed by the Private Placement School, in January 2007 Student was reading at almost the same level that he was reading when he left the Private Placement School in June 2005, and had made some progress in his math abilities. The Private Placement School also determined that when Student re-enrolled at the Private Placement School, Student was exhibiting maladaptive behaviors.

[Decision at 9]. The hearings officer also recognized that Blake C. did well after he re-enrolled at PAC in 2007:

> 24. During the time that Student has been attending the Private Placement School, Student has made significant academic progress in reading and mathematics, as well as making progress in his social skills and reducing maladaptive behaviors. . . . Student's teacher at the Private Placement School noted that Student benefited from "structured learning, adaptations such as sensory stimuli and breaks, visual schedule, reinforcement schedules, token systems, frequent reinforcement/breaks, and assistive technology."

19

[Id.].  The officer also made findings regarding SY 2006-07 based upon testimony

or evidence from the DOE:

> 33.  According to Student's Home School Progress Report, by
> the second quarter of the 2006-2007 school year [(]December 20,
> 2006), Student was making some progress on the benchmark/short
> term objections for the goals in the following areas:  a) Language Arts
> – Oral Communication; b) Language Arts – Writing; c) Language
> Arts – Reading & Literature; d) Mathematics – Number and
> Operation; e) Mathematics – Patterns, Functions, and Algebra; e) [sic
> f)] Career and Life Skills; f) Science – Domain I; and g) Social
> Studies – Cultural Anthropology.

[Id. at 13] (This Finding is later referred to as "Finding 33.")  The decision also

listed a page and a half summary of "progress" as prepared by Blake C.'s home

school teacher after Blake C. left the home school for PAC:

> 34.  Pursuant to Mother's request, Student's Home School
> Teacher prepared a summary of Student's progress at the Home
> School which reflected that as of January 25, 2007, Student had made
> progress of the following benchmarks/objectives:  [Areas omitted].

[Id. at 13-15] (This Finding is later referred to as "Finding 34.")

In making his ultimate ruling, the hearings officer reasoned as follows:

> As to Petitioners' assertions that the December 18, 2006 IEP
> substantively denied Student FAPE, although there was compelling
> evidence to establish that Student was able to make substantial
> progress since attending the Private Placement School in January
> 2007, the Hearings Officer must conclude that both the August 7,
> 2006 IEP and the December 18, 2006 IEP were reasonably calculated

to enable Student to receive educational benefits.[11]

[Id. at 17 (emphasis added)].

During the hearing, the hearings officer made a crucial ruling regarding the August 7, 2006 IEP and the December 18, 2006 IEP.  As it does here, the DOE had argued that there should be a distinction made between the August 7, 2006 IEP (covering the entire SY 2006-07) and the December 18, 2006 IEP.[12]  The

_____

[11] Curiously, the hearings officer had noted that "Petitioners did not introduce the August 7, 2006 IEP into evidence."  [Decision at 7 n.4].  Nevertheless, the August 2006 IEP appears to be in the record at AR V.13, tab 11, BC135-163.

[12] The DOE also argued that the December 18, 2006 document is not an actual IEP, but rather just a restatement of the then-existing August 7, 2006 IEP, which covered the whole SY 2006-07.  The hearings officer, however, ruled (correctly) that the December 18, 2006 IEP was a stand-alone offer of FAPE -- essentially that it was an autonomous IEP.  This is important because, among other things, Blake C. sought (and seeks) to attack the basis of the Present Levels of Educational Performance ("PLEPS") in the December 18, 2006 IEP.  In response to an objection from counsel for the DOE, the following exchange occurred:

    MR. ELLIS [for Mr. Levin (Blake C.'s counsel)]:  On December 18th the goals and objectives . . . they happen to have the same goals and objectives as the IEP dated August 7th.

    THE HEARINGS OFFICER:  The evidence so far indicates that the only substantive change was the provision of ESY services for the winter break.

    MR. ELLIS:  That may be correct.  But the document that was provided to the parent was dated 12/18/06. . . . December 18, 2006, they offered an IEP with revisions.  And the parent is arguing that IEP is a denial of FAPE.  The IEP of December 18, 2006 and the IEP of August 7, 2006 are different in that revision[.]

    THE HEARINGS OFFICER:  So do I understand the Petitioners' argument then is that the December 18, 2006 IEP is more than simply a restatement of the August 2006 IEP, that it is an autonomous –

    MR. ELLIS:  Yes.  Because DOE – The parent requested a revision.  The DOE

(continued...)

21

December 18, 2006 IEP is identical to the August 7, 2006 IEP, at least as to the

Present Levels of Educational Performance ("PLEPS").  The December 18, 2006

IEP was an offer of FAPE that added details of "Extended School Year" ("ESY")

for the extended holiday break in December 2006.  As the hearings officer found,

the meeting that led to the December 18, 2006 IEP was convened primarily to

discuss this change (addition of ESY), and not to discuss any perceived

impropriety with the PLEPS.  Nevertheless, what is at issue here is the autonomous

---

[12](...continued)
added hours to it.  Therefore, it's an autonomous offer of FAPE.

THE HEARINGS OFFICER:  On that basis I'm going to overrule the objection [of the DOE.]

MR. SCHULANER [DOE's counsel]:  If I could take exception to the hearing officer's ruling.  In regards to Mr. Levin's argument that it's an autonomous document or an autonomous offer of FAPE . . . . [The prior written notice of the department action for the December 18, 2006 meeting] merely states as the proposed action at that meeting Blake will receive individualized instructional support during the winter break[.] . . . And that's the only action that's been taken. So there is no autonomous new offer of FAPE or anything like that.  Only this action was taken in accordance with the law at that meeting.
. . . .
THE HEARINGS OFFICER:  Just for clarification.  I don't even know if it's possible for an IEP only to contain an authorization for ESY.  But it is my interpretation and my determination that when an IEP is formulated which contains the entire educational program of a student as of the particular date, should the parents or the Department of Education choose to challenge that IEP as it was written on a particular date, then so be it.  Exceptions will be noted to my ruling.

[Tr. of Aug. 3, 2007, hearing at 238-240].  Even if the December 18, 2006 meeting was convened to discuss ESY, the Court agrees that the IEP dated December 18, 2006 is an autonomous offer of FAPE.

offer of FAPE made on December 18, 2006.

Given that ruling, however, the hearings officer went on (based upon an objection from the DOE) to disallow almost any inquiry into pre-December 18, 2006 events.  Because the December 18, 2006 IEP was substantially similar to the August 7, 2006 IEP, the hearings officer thus disallowed any inquiry into the basis for the December 18, 2006 IEP.  [See Tr. of August 3, 2007, hearing at 243-248]. The DOE effectively seized upon the hearings officer's ruling regarding the December 18, 2006 IEP (i.e., that the December 18, 2006 IEP was an autonomous offer of FAPE) to mean that almost anything pre-December 18, 2006 (e.g., the August 7, 2006 IEP) was irrelevant; the issue under Rowley was whether the December 18, 2006 IEP (and not the previous IEP) was "reasonably calculated to enable the child to receive educational benefits."[13]

_____

[13] For example, DOE's counsel made the following objection to a question by Petitioner's counsel attempting to establish that the PLEPS in the IEPs (both the August and December 2006 plans) were deficient:

> . . . Given that the disputed IEP is in December 2006 it wouldn't be relevant whether or not in the past the child made progress or not.  The question is objectively whether or not the December 18th IEP . . . was a correct offer of FAPE  at the time based upon all the information that the team had in December of 2006.

[Tr. at 245].  The hearings officer responded:

> . . . . Since you [Petitioner] have now specifically identified only the December 2006 IEP, the provisions of that particular IEP as of December 2006 compared to

(continued...)

Despite that evidentiary ruling, and his subsequently conducting the hearing on that basis, the hearings officer's ultimate finding of no substantive denial of

---

[13](...continued)
the progress that the student has made as reported in Respondent's Exhibit 12 at page 190 is of what quarter?
. . . .
    For the record, for future reference, this particular quarter as identified as December 20, 2006, that would have been two days after the effective day of the December 18th, 2006 IEP.

    For purposes of what you have challenged and what you have identified as being a similar IEP, I am now going to hold you to that.

[Tr. at 245-46].  This exchange then occurred:

    MR. SCHULANER: We object to the relevance [of Petitioner's inquiry into the basis for the PLEPs and that they had not changed essentially since 2005] unless it is restricted to the time period supposedly encompassed by the December 18th IEP, which would have been essentially a two-day period up to the 20th.  If it's going beyond that and asking for a time period prior to the autonomous IEP, as they refer to it, the December 18th IEP, then it doesn't appear to be relevant and it's outside the scope of this hearing.
    . . . .
    MR. ELLIS:  We're trying to establish through this line of questioning that the PLEP at the time of the 18th either had information that was up-to-date or was not.  In this case we're showing that he had the same information in the PLEP that was –

    THE HEARINGS OFFICER:  The purpose is to show the information in the PLEP as of December 18th, 2006 was not current? . . . . I don't believe there's any evidence to show that it wasn't current as of December 18, 2006.  So what is the relevancy at this point?

    MR. ELLIS:  Related to just the letters [which Blake C. was supposed to learn], that there was no difference.  That the PLEP is accurate as of the 18th of December.  Educationally that's where he was at . . . . And then two months later, after he's been at Pacific Autism Center, he's reading.

    THE HEARINGS OFFICER:  I'll sustain the [DOE's] objection.

[Tr. at 247-48].

FAPE was based substantially on the notion that Blake C. had made progress as measured from prior times (and therefore there must have been an IEP reasonably calculated to produce educational benefit). The hearings officer excluded inquiry and cross-examination into pre-December 18, 2006 documents, but then measured "progress" (at least in significant part) from pre-December documents.

Blake C.'s argument has been that there was no real or meaningful benefit or progress because the baseline from which to measure "progress" was wrong. It was not measured in relation to the child's potential. He argues, for example, that the PLEPs from 2005 were substantially similar as the PLEPs in August and December of 2006. His argument is that in December 2006 he was asked to learn things that he already knew. If "progress" at the beginning of 2007 was measured from 2005, then it is an irrelevant measurement. For example, Finding 33 [Decision at 13] measured progress for "the second quarter" of SY 2006-07. Finding 34 [Decision at 13-14] could have measured progress from 2005. Even without fully accepting Blake C.'s argument, the hearings officer's limitations on examination were prejudicial. Petitioner was denied the opportunity to examine the very basis for the hearings officer's decision (that Blake C. was making progress). The Court thus accords little weight to the finding (e.g., Findings 33 and 34) that Blake C. was progressing as a result of the August and December

2006 offers of FAPE.

Prejudice is also demonstrated because the other relevant (and conflicting) findings regarding progress indicate that (1) Blake C. made no or very little meaningful progress between 2005 and 2007,[14] and (2) Blake C. made substantial progress after leaving the home school in January 2007.[15]  These latter two findings suggest that the offer of FAPE for SY 2006-07 was deficient and was not "reasonably calculated to produce meaningful educational benefit."

## C.

Finally, the Court also agrees with Petitioner's separate argument that the DOE violated the IDEA by failing to perform an assistive technology ("AT") evaluation.  See 20 U.S.C. § 1414(d)(3)(B)(v) (requiring as part of the development of an IEP that an IEP team "consider whether the child needs assistive technology devices and services") and § 1412(a)(12)(B)(i); 34 C.F.R. § 300.105(a) ("Each public agency shall ensure that assistive technology devices or assistive technology services, or both, as those terms are defined . . . are made

---

[14] See Decision at 9, para. 21 ("according to the assessment performed by the Private Placement School, in January 2007 Student was reading at almost the same level that he was reading when he left the Private Placement School in June 2005[.]").

[15] See id. ("During the time that Student has been attending the Private Placement School, Student has made significant academic progress in reading and mathematics, as well as making progress in his social skills and reducing maladaptive behaviors").

available to a child with a disability[.]").

Here, the record establishes that Blake C.'s mother raised potential assistive technology devices (a "word processor unit" to assist in forming letter and writing without having to focus on fine motor skills) with his home school  [Tr. of July 31, 2007, at 41-42; Tr. of August 3, 2007, at 263].  There is no evidence, however, that the DOE ever considered, in any manner, any type of AT device.  The evidence is that no evaluation was done because "it was not a concern brought up" (either before or at the December 2006 meeting).  [E.g., Tr. of Aug. 3, 2007, at 263].  There certainly are indications in the record that Blake C. should have at least been at some point considered or evaluated for AT.

## IV.

For the foregoing reasons, the Court REVERSES the administrative decision of September 28, 2007, and AWARDS Plaintiff Blake C. $62,680.83, which represents tuition incurred at PAC from January 29, 2007 through July 8, 2007.  Judgment shall enter in favor of Plaintiff.

Plaintiff is deemed the prevailing party and may proceed to file a post-judgment request for reasonable fees and costs.  Such a request, if any, will be referred to the assigned Magistrate Judge in accordance with normal procedures.

Plaintiff should be careful to limit any such request to fees and costs incurred for this particular review of the September 28, 2007 decision (not for fees and costs related to other administrative or court proceedings between the parties).

IT IS SO ORDERED.

DATED:  January 15, 2009.



_____
Samuel P. King
Senior United States District Judge

Blake C. v. Department of Education, Civ. No. 07-535SPK-LEK, Order Reversing Decision of Hearings Officer.